JAMES R. HUME, Appellant, v. GEORGE W. HALE et al., Respondents.

St. Louis Court of Appeals, February 1, 1910.

1. **APPELLATE PRACTICE: Theory of Both Parties.** The appellate court will not pronounce on the soundness of a theory of a case where both parties coincide in putting it forward as the one to be followed on the trial of the case.

2. **BILLS AND NOTES: Payment in Labor: Demand for Performance Essential.** Where a note, or an instrument executed at the same time (especially if they refer to each other), provides for payment in work, a demand for performance by the payee is essential to a recovery on such note.

3. **LANDLORD AND TENANT: Rent Payable in Labor: Failure to Allow Performance: Damages for Breach.** In an action by a landlord on a note given for rent, where the lease provided the lessee should give a rent note, which might, at his option, be paid in labor, and the lessee filed a counterclaim stating he had elected to pay the note in labor and praying damages for the alleged failure of the landlord to designate the work to be performed, the lessee, upon proof of the breach of said provision of the lease, would be entitled to recover damages under his counterclaim.

4. ————: ————: ————: Effect of. In such a case, it was not within the right of the landlord to defeat the contract by refusing to designate the work to be performed.

5. ————: ————: ————: Damages for Breach: Measure of Damages. In such a case, where the lessee had men hired, who were ready and able to work, as was the lessee himself, but the landlord refused to designate the work, and the lessee could obtain no work that year from other persons for his men and had none of his own, the measure of damage due to the landlord's breach was the amount of rent the tenant was to pay in work.

6. ————: Tenant Removing from Premises: Does not Constitute Breach, When. Where a father and son leased a farm for a term of years, the lease providing that part of the rent might, at the option of the lessees, be paid in labor, the fact the son moved onto another farm before the expiration of the term would not constitute a default on his part, he having testified he was ready and willing to help his father do the work required, and the lease itself containing no stipulation against his removing, and the landlord having raised no question about it, but having accepted rent and treated the lease as still in force.

7. ————: Landlord's Breach of Lease: Damages. Where a lease for a term of years provided that if the lessor sold the property before the expiration of the term, the lessee should relinquish possession under certain conditions, and the lessor before the expiration of the term notified the lessee he had sold the premises and the latter thereupon relinquished possession of the same to him, but as a matter of fact he had not sold the same, such conduct was tortious and if the lessee was damaged by the tort he was entitled to recover compensation.

8. VERDICT: Failure to Make Finding on One of Several Counts: Pleading. In an action on two notes, where an answer was filed which contained several counts, in one of which there was a plea that one of the notes sued on had been paid, such plea was not in any true sense a count requiring a separate finding, and was covered by a finding in favor of defendants on the count of the petition which declared on said note.

9. APPELLATE PRACTICE: Invited Error. Where plaintiff asked an instruction submitting an issue of mistake in the execution of a lease to the jury, he could not object on appeal that the court did not determine such issue.

10. WITNESSES: Wife of Defendant: Harmless Error. Plaintiff was not prejudiced by the incompetency of the wife of one of

the defendants, the only fact not testified to by her husband concerning which he testified being a fact as to which there was no controversy; her testimony as to this fact, while probably incompetent, not being such as to have had any influence on the jury prejudicial to plaintiff.

11. **APPELLATE PRACTICE:** General Assignments of Error Insufficient. Assignments that the court erred in its rulings on certain requests for instructions were insufficient where they failed to particularize in what the error consisted.

Appeal from Scotland Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

AFFIRMED.

*T. L. Montgomery* for appellant.

(1)  The court should have sustained the objections of the plaintiff to the introduction of any evidence on the third defense plead as a counterclaim in the defendants' answer. It stated no defense to the cause of action sued on. This error apparent on the face of the record may be raised in this court for the first time. Maginn v. Schmick, 127 Mo. App. 411; Railroad v. Carlisle, 94 Mo. 166; Hughes v. Hood, 50 Mo. 350; Huiest v. Marx, 67 Mo. App. 419; Riley v. Hall, 158 Mass. 240; Mack v. Patchin, 42 N. Y. 167; Shoemaker v. Crawford, 82 Mo. App. 487; Gildersleeve v. Overstolz, 90 Mo. App. 518; McAdams on Landlord and Tenant, p. 352, sec. 109; Sedgwick on Damages, sec. 1022; Green and Meyer's Missouri Pr. and Pl., secs. 822, 823, and 828, pp. 312 and 314; secs. 4107, 4108, R. S. 1899. (2)  The court should have sustained plaintiff's objections to the introduction of any testimony on the 4th defense plead as a counterclaim by the defendants to plaintiff's cause of action set up in the second count in the petition. It stated no defense to the cause of action sued on apparent on the face of the record. Edwards v. McKee, 1 Mo. 123; Ramsey v. Waltham, 1 Mo. 395; Beach v. Curle's Admr., 15 Mo. 106; Lavin v. Grand Lodge A. O. U. W.,

112 Mo. App. 1; Snell v. Kirby, 3 Mo. 22; Knettle v. Scott & Bottom, 18 Mo. App. 412; Hay v. Short, 49 Mo. 139; Gordon v. Bruner, 49 Mo. 570; Fallon v. Stahl, 17 Mo. App. 475; Way v. Johnson (S. D.), 58 N. W. 552. (3) The evidence of Mrs. Hale, wife of defendant George Hale, should have been excluded. She was not a competent witness for the defendants. Flannery v. Railroad, 44 Mo. App. 396; Bank v. Wright, 104 Mo. App. 242. (4) The court did not pass upon the equitable matter, asking the reformation of the lease set up in plaintiff's reply, as to whether the year 1904 was included in the lease. Neither did he submit interrogatories to the jury. This issue made by the pleadings has not been passed upon. The equitable cause of action should have been tried first. This error requires a reversal of the cause. It was prejudicial error. This cause of action should have been tried separately. R. S. 1899, sec. 607; Martin v. Turnbaugh, 153 Mo. 172; Rich v. Donovan, 81 Mo. App. 184; Leeper v. Lyon, 68 Mo. 216; R. S. 1899, secs. 721, 722, 723, 724; Bender v. Markle, 37 Mo. App. 234; Allen v. Logan, 96 Mo. 591. (5) The jury did not make any finding in their verdict on the second defense set up in defendants' answer. Marshall v. Armstrong, 105 Mo. App. 234; R. S. 1899, sec. 726; Parsons v. Randolph, 21 Mo. App. 353; Winkelman v. Maddox, 119 Mo. App. 658. (6) The verdict is not responsive to the issues made by the pleadings. Fenwick v. Logan, 1 Mo. 401; Raston v. Collier, 1 Mo. 421; Parker's Admr. v. Moore, 29 Mo. 218; Allison v. Darton, 24 Mo. 343; Cattell v. Dispatch Pub. Co., 88 Mo. 356; 29 Am. and Eng. Ency. Law (2 Ed.), 1012; Thompson on Trials, sec. 2630. (7) The court erred in refusing instructions asked by the plaintiff. Bach v. Curle's Admr., 15 Mo. 106; R. S. 1899, secs. 4107, 4108. (8) The court erred in giving the instructions asked by the defendants. Christian v. Life Ins. Co., 143 Mo. 460; Capital Bank v. Armstrong, 62 Mo. 591; Cottrill v. Krum, 100 Mo. 397; Camp v. Railroad, 94 Mo. App. 272. (9) The verdict

is against the evidence and the weight of the evidence, against the law and not supported by either. Payne v. Railroad, 129 Mo. 405; Roman v. Trading Co., 87 Mo. App. 186.

*Berkheimer & Dawson* and *Smoot & Smoot* for respondents.

This action was instituted on two promissory notes, each dated January 1, 1902, due one year after date, promising to pay $332.50 for value received with interest at the rate of eight per cent per annum from maturity, compounded if not paid annually, and containing a recital that the makers should pay an attorney's fee if the note was collected by law. The two notes were signed by defendants George W. and Charles L. Hale, had been indorsed in blank by James R. Hume and transferred to the Kahoka Savings Bank shortly after their execution, had remained the property of that bank for more than a year and then had been reassigned to James R. Hume, the original payee. The petition is in two counts, one on each note, and each count alleges, among other matters, the execution of the note declared on and its contents; that it was given for the rent for the year commencing March 1, 1902 and terminating February 28, 1903, of a certain described farm containing 332½ acres in Clark county, which plaintiff had leased to the defendants, and that $50 would be a reasonable attorney's fee to collect it. The answer was drawn in the form of four counts, of which the first admitted the execution of the notes in suit and that plaintiff was and is the owner of the same, but denied every other allegation of the petition. The second count merely averred defendants had fully paid and discharged one of the notes. The third count said plaintiff and defendants on December 3, 1899, entered into a written contract whereby plaintiff leased to defendants the farm de-

scribed in the petition for a term to begin January 1, 1900, continue for five years and end December 31, 1904; that in said contract defendants agreed they would execute and deliver to plaintiff two notes each year for the sum of $332.50 respectively, payable in one year from their date; that by the terms of the lease one of said notes should be paid in cash and the other in labor done on the premises by defendants, or in cash, at the election of defendants; said labor to be designated by plaintiff; that the written lease further provided plaintiff might sell the farm during the term of the tenancy, and if he should sell during said term at a date between December first and March first of any year, plaintiff agreed to pay defendants the sum of two hundred dollars and on payment thereof defendants agreed to deliver possession of the premises to plaintiff and remove from them; that the lease further said if plaintiff sold the premises at any other time than between the two dates mentioned, defendants agreed to deliver possession to him; that on November —, 1902, plaintiff notified defendants he had sold the premises and asked them to give possession as per their contract; that defendants, on receiving the said notice and demand, relying on the statements contained in it and believing they were true, and to comply with their contract in that regard, removed from the farm and delivered possession to plaintiff in March, 1903; that at the time plaintiff so notified defendants he had sold the farm and demanded possession, he had not sold it and at the commencement of this action was still the owner; that plaintiff notified defendants he had sold and demanded possession for the fraudulent purpose of deceiving defendants and obtaining possession of the farm, and for the purpose of cheating defendants out of the value of the rent of the farm, to-wit, for the years 1903 and 1904; that when said notice was given defendants' term did not expire until January, 1905, and by reason of the fraudulent conduct of plaintiff, they were deprived of

the unexpired portion of the term, or two years; that the reasonable yearly rental of said farm was $1000, and under their agreement to pay $650 for it to plaintiff, and by reason of plaintiff's fraudulent conduct aforesaid, defendants were defrauded out of $350 each year, or the difference between the rent they were to pay and the value of two years of the term, the sum of $700; that they were also put to the expense of $100 in removing their stock, machinery, goods and household effects from the farm, and the further expense of $50 in procuring another place to which they might move; wherefore the defendants prayed judgment against plaintiff for $850 as a counterclaim. The fourth count of the answer set up the contents of the written lease substantially as set up in the third count, alleged defendants had agreed to execute two notes of $332.50 each at the beginning of each year for the rent of said year, and by the terms of said lease the notes were to be paid in cash or in labor and improvements on the farm, and if defendants elected to do work in payment of a note, they were to do it at the direction of plaintiff. The further averment was that the notes declared on in this action, were given under the lease contract for the rent of the premises for the year ending March 1, 1903, and were due and payable on the first day of January, 1903; that during the year defendants elected to pay one of the notes in work on the premises and requested the plaintiff to designate the work desired, notifying him they were willing and ready to do it; but plaintiff, in disregard of his duty under the contract and in violation of the terms thereof, refused to designate what work should be done on the farm, and refused to point out to defendants any work for them to do in payment of said note so they might discharge themselves from liability, wherefore defendants averred they were damaged by this violation of the contract by the plaintiff in the sum of $350, for which sum they asked judgment. In reply plaintiff denied defendants had paid or discharged either of the

notes as alleged in the second count of the answer. In reply to the third count of the answer plaintiff admitted he had represented to defendants the farm had been sold, but denied he did so for the purpose of cheating them out of the value of the rent of the farm for the years 1903 and 1904; alleged further the rent received for the farm was its full value; alleged defendants' term of lease would have expired March 1, 1904, according to the true understanding of the parties, but by mistake in writing the lease, it was so written as to fix March 1, 1905, as the date of expiration. Plaintiff denied defendants were defrauded of two years of their term by representations of plaintiff, denied the reasonable value of the yearly rental of the farm was $1000, denied the difference in said value and what defendants would pay was $350 a year, denied defendants were put to $100 expense in removing from the premises, or $50 in procuring another place, and, in conclusion, denied defendants had any right to the allowance of a counterclaim for the causes aforesaid in the sum of $850, or any other sum. In reply to the fourth count of the answer, plaintiff denied that during the year 1903 defendants elected to pay one of the notes by work on the farm and alleged both notes were payable in money; denied defendants requested plaintiff to designate work to be done in discharge of the note; denied defendants paid any part of the note in work and averred he tried to induce defendants to do work but failed; denied defendants were damaged in the sum of $350 by any act of plaintiff in refusing to furnish them work to pay one of the notes and contended defendants should not be allowed a counterclaim in the sum of $350 or any other sum by reason of the matter stated in the fourth count of the answer. Further replying to the fourth count, plaintiff averred that in the year 1898, he contracted with defendants to rent them a farm in Clark county for five years, the term to commence March 1, 1899, and end March 1, 1907; that pursuant to said contract defendants went into posses-

sion of the premises March 1, 1899, as tenants, and afterwards the contract was attempted to be reduced to writing but by mistake of the scrivener, the year 1904 was included in the term, which mistake neither defendants nor plaintiff observed when the contract was signed and executed. The written contract was then set up in reply and is as follows:

"Kahoka, Mo., Dec. 18, 1900.

"Know All Men By These Presents: That I, James R. Hume, of the county of Clark and State of Missouri, for and in consideration of the sum of $665, to be paid for each of the following; viz, 1900, 1901, 1902, 1903, 1904, by George W. Hale and Charles Hale of the said county of Clark, State of Missouri, do grant, bargain and lease unto the said George W. Hale and Charles Hale the following described lands, to-wit (here follows description).

"The conditions of this lease are as follows: the said George W. Hale and Charles Hale to make at the beginning of each and every year their two promissory notes for the sum of $332.50, one of which said notes is to be paid in cash, the other to be paid in cash or improvements to be made on the farm, partly in cash or partly in work as the said George W. Hale and Charles Hale may elect. All work done on said premises shall be done as dictated by said James R. Hume, for which said George W. Hale and Charles Hale shall receive credit on said note at reasonable wages. Should the said George W. Hale and Charles Hale refuse or fail to make improvements as herein specified, then the said James R. Hume may proceed to collect the amount remaining unpaid in cash. It is hereby agreed that the said James R. Hume may sell said farm herein described at any time as follows: If sale should be made between the first day of March and the first day of December following of any year during the term of this lease, the said George W. Hale and Charles Hale shall give possession on or before the 28th day of February following,

but if the sale should be made between the first day of December and the first day of March of any year during the term of this lease, then in this event the said James R. Hume shall pay the said George W. Hale and Charles Hale two hundred dollars ($200) in cash, and the said George W. Hale and Charles Hale shall on receipt of two hundred dollars ($200), vacate the premises on or before the 28th day of the following February.    George W. Hale and Charles Hale shall keep an itemized account of all the work done, the date and time and amount of said work, and shall present the same on the first day of each year and the said James R. Hume shall then and there enter the same on the note aforesaid, and should there remain a balance due and unpaid, the said remainder shall draw interest from maturity at the rate of 8 per cent.

"Witness our hands and seal this 31st day of January, 1901.    James R. Hume, Charles Hale, George W. Hale.    (Seal)."

After pleading said writing according to its tenor, plaintiff averred it was the intention of all parties to it, that the term thereof should consist of the years 1899 to 1903, inclusive, instead of the years 1900 to to 1904 inclusive, and prayed the court to correct the instrument so as to conform to the intention of the parties. At the outset of the trial counsel for defendants admitted if plaintiff recovered, $50 would be a reasonable attorney's fee on each count; whereupon the burden of proof was imposed on defendants and no objection was raised to this course. But counsel for plaintiff objected to any evidence being received on the third count of the answer as to the measure of damages for breach of the contract as alleged in said count, including the expenses of moving.    In the same connection an oral motion was made for a judgment in plaintiff's favor on the pleadings, because defendants had not denied plaintiff's cause of action, but had admitted the execution of the notes and that plaintiff is and was the owner at the time the action

was instituted. The objection and motion were proffered together, without waiting for a separate ruling on the first before imposing the second. The court treated them as one and overruled it; whereupon an exception was saved. It will be gathered from what has been said defendants claim one of the notes in suit, both of which were given for rent for the year 1902, had been paid, and payment of the other one, which they had elected to discharge by work on the farm, had been prevented by plaintiff's refusing to designate what work should be done. As to the payment of one of the notes in cash, the evidence is contradictory. A note for $1082 was executed by George W. Hale, March 13, 1901, to the Kahoka Savings Bank, due one year after date. Plaintiff Hume was the cashier of that bank at the time and until September, 1903. This note was secured by a chattel mortgage on cattle. It was indorsed as follows: "Note produced, assigned to James R. Hume and cancelled this 21st day of January, 1902. B. S. Crawford, Recorder." The note for $1082 was taken up on January 20, 1902, by a note for $1488.31, executed by George W. Hale and Charles Hale to the Kahoka Savings Bank, drawing interest at the rate of eight per cent per annum and due one day after date. It, too, was secured by a chattel mortgage on live stock and was indorsed as follows: "Note produced, assigned by (to?) James R. Hume and cancelled this 9th day of September, 1902. B. S. Crawford, Recorder." It will be observed the last note was given for $406.31 more than the previous note, and the testimony for defendants tends to prove this excess was composed of one of the notes in suit, which was added to the note for $1082 and the note for $1488.31 was made to include both of them, taken in discharge of both and paid by defendants on September 9, 1902. That the note for $1488.31 was paid on said date is not denied, but testimony for plaintiff goes to prove it was not composed in part of either of the notes in suit, but of the note for $1082 and a previous rent

note executed by defendants for the rent of the farm during the year 1901, and which defendants had failed to pay. George W. Hale, who transacted the business with plaintiff in the main, testified plaintiff agreed to surrender to him both the note for $1082 and one of the notes in suit, when the note for $1488.31 was executed, but made some excuse for not doing so at the instant and afterwards sent by his (Hale's) wife, the note for $1082 inclosed in an envelope, omitting to put in one of the notes in suit as agreed. Mrs. Hale testified Hume handed her the envelope and told her to take it to her husband. George W. Hale testified he did not look in the envelope or discover the note in suit had not been inclosed until some months afterward. The admission of Mrs. Hale's testimony was excepted to on the ground she was the wife of a defendant. The notes in suit were executed pursuant to urgent written demands sent by plaintiff to defendants and covered, as said, rent for the year from March, 1902, to March, 1903. Plaintiff testified there was a mistake in drawing up the lease and it should have made the term begin in 1899 and end March 1, 1904, instead of March 1, 1905. Both parties seem to agree in their testimony the years ran from March first, though defendants' answer says otherwise and we find nothing in the written lease to that effect, as it merely purports to be for the years 1900 to 1904, inclusive. Defendants testified the lease was right as written and the understanding was the term was to expire in March, 1905. The following letter written to George W. Hale by James R. Hume would uphold the idea the term was to begin in 1900 and expire in 1905, as this letter was written September 26, 1900. It is as follows:

"Kahoka, Mo., Sept. 26, 1900.
"Geo. W. Hale, Luray, Mo.

"Dear Sir: Your letter saying you had concluded to rent the farm, for 5 years, one-half cash, one-half work, has been rec'd.

"Go to the sheriff's sale and if you can get a bargain on those cattle and hogs, take it, take it. Don't buy any old cattle. You know cattle are very reasonable now to what they have been. Take your time and get good stock. The secret is in buying. I am going to Richmond, Va., and will be gone about a week or ten days, will fix contract when I get back.    Resp.,

"JAMES R. HUME."

It may be well to state defendants went on the farm at first under a contract to buy it, which fell through. They said they afterwards occupied it for a year or two under a verbal contract of lease, and then took the written one; but plaintiff says the written one ran from the beginning of their occupancy, or perhaps from a date a year later. The evidence is confusing at this point. The court did not pass on plaintiff's request for reformation of the instrument. Charles Hale, son of George W. Hale, and one of the lessees, moved to another farm in the neighborhood some time in 1901, but no complaint was made by Hume of this matter and the tenancy was still treated as in force. In November, 1902, plaintiff delivered to defendants this notice demanding possession of the premises:

"Kahoka Savings Bank.
Capital and Surplus, $30,000.
Copy of Notice.
Geo. W. Bostic, President.
James R. Hume, Cashier.
Kahoka, Mo., Nov. 29, 1902.

George W. Hale and Charles Hale you are hereby notified that I have contracted and sold my farm on which you now live and agreeable to our lease of December 18, 1900, you will give possession on or before the 28th day of February, 1903.

JAMES R. HUME."

Plaintiff likewise represented orally to George W. Hale he had sold his premises. Pursuant to the notice,

defendants gave possession of the farm to plaintiff about March 10, 1903, when, according to their version, there were two years of the term to run, and according to plaintiff's version, one year more. Testimony was adduced tending to prove the reasonable rental was $2.50 to three dollars an acre and hence defendants' term was worth a larger rental than they were paying—two dollars an acre. There was some testimony, too, of the cost and expense of removal. It was admitted plaintiff had not sold the farm as he notified defendants he had, but that he still owned it. His testimony as to this matter was equivocal and when cross-examined on the witness stand as to what he meant by saying in the notice he had sold, answered he generally meant what he said. The testimony of defendants was that they offered repeatedly to do work to pay one of the notes and called upon plaintiff to designate what he wanted done, but he said he could get other men to do the work for less and refused to point out any for defendants to do. Plaintiff swore he requested defendants to do work on the farm to pay half of the rent for 1902, but they would not; that George W. Hale was a candidate for office and away from the farm most of the time. The court instructed the jury defendants admitted the execution of the notes in suit, agreed fifty dollars was a reasonable attorney's fee for their collection and, therefore, the verdict should be for plaintiff on the first count, unless the jury believed from the greater weight of the evidence, the note declared on in it had been paid and discharged before the action was begun; that defendants admitted the execution of the note declared on in the second count of the petition and agreed fifty dollars was a reasonable attorney's fee, and the jury should find for plaintiff on said count; further advising the jury though they believed it was the agreement between plaintiff and defendants the note declared on in the second count was to be paid for in work or in cash, at the option of defendants, still the jury

Hume v. Hale.

must find for plaintiff on said count. The jury were further told it devolved on defendants to prove any payment claimed to have been made on the notes by the greater weight of the evidence. As to the defense to the second count, based on the alleged refusal of plaintiff to designate any work for defendants to do in payment of one of the notes in suit, the court instructed, at the instance of plaintiff, as follows: That if the jury found defendants were ready, willing and able to work for plaintiff in payment of the note sued on in the second count and were damaged by reason of plaintiff's refusal to designate such work, then the measure of damages was the difference between what they could have earned working for plaintiff and what they could have earned by working for others at the like work in the vicinity or in working for themselves, provided the jury found defendants by ordinary diligence could have procured work in the neighborhood or had work of their own to occupy their time; that if defendants had work of their own to do of equal value and did not lose any time on account of plaintiff's failing to furnish them work, no damages could be allowed them on account of this default of plaintiff. As to the damages defendants might have sustained from the loss of the use of the farm (we suppose if the jury found any part of the term had been lost by plaintiff wrongly demanding possession) the jury were instructed at plaintiff's request, the measure of damages they should apply "for the loss of the use of the farm by defendants is the difference between the price defendants agreed to pay and what the rental value of the same was in the neighborhood of said farm for the time; and if you believe that the rent they had agreed to pay for the same was its full rental value, you cannot allow defendants anything for being caused to remove from said farm." Four instructions requested by plaintiff were refused and were, in substance, as follows: The first one declared defendants

146 App.—43

had not produced or offered any evidence of what they would have earned by the day, week or month, or on a job that might have been furnished, or the length of time it would have required to perform labor to pay off the note sued on in the second count of the petition, nor had they given or offered any evidence of time they lost so the jury could estimate any damages suffered in consequence, and, therefore, no damages could be awarded them on that count. The second instruction declared plaintiff had rented the farm to defendants for them to cultivate and occupy, and if the jury found one of them removed from the farm and ceased to cultivate it under the contract, that was a rescission of the contract of lease and plaintiff was not required thereafter to retain the other defendant as his tenant but had the right to terminate the term and defendants had no right to recover damages for such act on plaintiff's part. The third refused instruction declared plaintiff had rented the farm jointly to defendants and the jury could only assess such damages as they had jointly suffered, and though it might be found one of them was damaged, unless the evidence showed the other was damaged also, no damages could be allowed. This must have related to the alleged wrongful dispossession of defendants, as did the fourth refused instruction, which declared that unless both defendants were forced to remove from the premises by plaintiff, no damages could be allowed on that score. At the request of defendants the court instructed as follows: If the jury found from the greater weight of evidence plaintiff had leased the farm to defendants for the years 1900 to 1904, inclusive, and afterwards on November 29, 1902, had given notice of a sale of the farm and had required defendants to deliver possession on or about February 28, 1903, and defendants, relying on said claim and representation of sale, had surrendered possession to plaintiff, and further believed the statement plaintiff made to defendants that he had sold the

farm was not true, then the jury should find for defendants on their counterclaim contained in the third count of the answer and assess damages to them equal to the difference between the actual rent paid by them and the actual rental value of the part of the term of which defendants were deprived by plaintiff's act; if the jury believed from the greater weight of the evidence the note declared on in the first count of the petition had been discharged by being incorporated in the note for $1488.31 and the latter note had afterwards been paid, then the jury should find for defendants on the first count of the petition; if the jury believed from the greater weight of the evidence one of the notes in suit was to be paid in work on the farm or in cash at the option of defendants and further believed they were ready and willing to do said work and offered to do it to discharge and pay said note, and plaintiff refused to designate the work to be done, then the jury should assess defendants' damages on the fourth count of the answer in such sum as they might believe from the evidence had been sustained by them by reason of plaintiff's default in said regard. The jury were further told they must find separately not only on each count of plaintiff's petition, but on each count of defendants' answer, and the form of verdict was given. A verdict was returned in favor of defendants on the first count of plaintiff's petition and a verdict for plaintiff on the second count in the sum of $470.51; for defendants on the third count of the answer for $332.50 and on the fourth count of the answer for $399; and on the whole in favor of defendants for $260.99. Motions for new trial and in arrest having been filed and overruled, judgment was entered in accordance with the verdict and plaintiff appealed.

GOODE, J. (after stating the facts).—1. (a). Though the record in this case is long and numerous facts are essential to a right understanding of it, the

points of law raised on the appeal are simple.   Both
sides proceeded on the theory that, even though the lease
contract provided defendants might pay one of the notes
given for each year's rent in labor and making improve-
ments on the farm, or in cash at their option, neverthe-
less all the notes were payable in cash; hence both of
those declared on and which had been given for the
rent for the year 1902, were payable in cash; and as it
was only contended one of them had been thus paid,
to-wit, the one declared on in the first count, plaintiff
was entitled to judgment on the other.   Conceding this
view, defendants contended if plaintiff prevented com-
pliance with the stipulation in the lease permitting
them to discharge one-half the rent for each year in
labor, they might recover damages from him in an ac-
tion on the lease for his breach; and as it had turned
out plaintiff first commenced an action on the notes,
defendants contended they were entitled to counter-
claim for any damages suffered in consequence of plain-
tiff's preventing them from discharging one of the notes
in work.   The view that defendants were bound in any
event to discharge both notes by a money payment was
adopted likely  because the notes contain promises to
pay in money, and the right to pay partly in work is
derived from the prior contract of lease, and not from
the notes themselves or an instrument contemporaneous
with them.   We have no reason to pronounce upon the
soundness of this theory, inasmuch as the parties coin-
cided in putting it forward as the one to be followed on
the trial of the case.   If the note, or some instrument
executed at the same time (at any rate, if they both
referred to each other) had provided for payment in
work, then a demand for performance by plaintiff would
have been essential to his recovery on such note.   [Weil
v. Tyler, 36 Mo. 369.]   And we do not say it would not
have been a good defense to the present action, wherein
both parties agree one note was payable in work, that
performance was not demanded, or was prevented by

plaintiff. We will deal with the error assigned upon this branch of the case, which is that the third count of the answer, wherein damages are demanded on account of plaintiff's refusal to comply with the lease by designating work for defendants to do and permitting them to do it, states no case for damages. Substantial justice was done, and no reversible error occurred, by allowing a recovery of damages, in view of the hypothesis on which both sides tried the case, to-wit, that defendants must pay both notes in money. As that hypothesis was accepted, the result was bound to be a judgment for plaintiff for the amount of one of the notes, to-wit, the one declared on in the second count, which there was no contention had been paid. But if this note remained unsatisfied because plaintiff had breached his contract of lease, as the evidence tended strongly to prove, then defendants were damaged by the breach and ought to be compensated. We know of no rule of law which would justify plaintiff in refusing to allow them to discharge one-half the rent of a year in work, and still hold them for the full rent. Both these notes were given pursuant to the lease agreement, not in addition to or in variation of it, and it provided how they should be paid; provided, too, that plaintiff should dictate the particular service defendants should render on the farm to pay one of the notes. This being true, it was not within his right to defeat the contract by refusing to designate work; and in so doing he violated the agreement.

(b). It is urged no proof was adduced to show how much defendants were damaged by plaintiff's refusal to allow them to satisfy part of their rent by work, as the value of the work they would have done was not proved, nor was it proved what similar work would have been worth if done for other parties. There was a conflict between plaintiff and defendants as to who was to blame, plaintiff saying he tried to get them to do work as agreed, they saying they offered to do it

and he would not let them.    What the evidence is uniform about is, that defendants had men hired who were ready and able to work, as were defendants themselves, but they could obtain none that year from other persons and had none of their own.    Hence the measure of their damages due to plaintiff's breach could only have been the rent they were to pay in work; that is, the amount of one of the notes.    This was what their lost time would have brought them if plaintiff had let them comply with their contract.    The verdict on this part of the case was, to say the least, not unjust to plaintiff; for it allowed him $332.50, the principal of the note; $88.01 for compound interest and $50 for an attorney's fee; whereas it allowed defendants only $332.50, or the amount of the principal, as damages for the breach.

(c).    Another contention made in this connection is that as Charles Hale, one of the lessees, had moved off the farm in 1901, he was not there to comply with his contract.    But he testified he was ready and willing to help his father do the work in 1902.    Little is said in the record about the removal of Charles Hale in 1901.    He and his father had rented another farm jointly as they had rented the one in question, and were cultivating both as partners.    Though he had moved onto the other farm, the lease with plaintiff did not provide against his doing so, there was no proof he had repudiated his contract with plaintiff, and for aught that appears both he and his father were complying and ready to comply in all respects with their obligations as lessees.    Plaintiff himself raised no question about it, but accepted his rent and treated the lease as still in force.

2.    (a)    It is insisted the court erred in submitting to the jury the counterclaim set up for the alleged fraudulent obtension of possession of the farm by plaintiff while defendants' term had yet two years to run.    No reason is advanced, nor can we perceive any reason, why defendants were not entitled to damages

for this wrong, if it was practiced.  Their written lease accorded them a term of five years and, according to plaintiff's testimony, said term had one year to run when they surrendered possession; whereas, according to the lease itself and the testimony of defendants, it had two years to run.  Plaintiff had no right to require possession of the premises during the term, except in case of a sale of the property, in which contingency defendants were bound to surrender possession to him after demand.  If the sale was made between December and March, he was to pay them two hundred dollars for relinquishing possession, and if it was made between March and December, they were to surrender possession without payment.  On November 29th, or two days before he would be bound to pay two hundred dollars for possession, he notified them he had sold the farm and demanded possession under the contract, by February 28th, following.  In point of fact he had not sold the farm, as the reply admits; and on the evidence before us this conduct was tortious, and if defendants were damaged by the tort, they were entitled to recover compensation.  There was testimony tending to prove their term was worth more than they were paying for it, and this matter was well submitted by the court in the instructions.

(b).  In connection with the counterclaim for damages for the fraudulent dispossession of defendants, plaintiff insists no one was dispossessed but George W. Hale, as Charles Hale had already moved away.  What we have said supra covers this matter. It is true Charles Hale was not residing on the farm at the time, but there is nothing to show he was not still in possession as lessee.  His own testimony goes to prove he was as do the notes in suit; for he executed them with his father after he had moved.

3.  A point is made against the verdict because there was no finding on the second count of the answer. The so-called second count of the answer was simply a

plea that one of the notes had been paid, and was covered by the finding in favor of defendants on the first count of the petition. The second count of the answer was not, in any true sense, a count which required a separate finding.

4. Error is assigned because the court did not pass on the averment in the reply of mistake in the written lease and prayer that it be reformed, before submitting other issues to the jury. Suffice to say as to this point that the court was not requested to do this, but instead plaintiff himself asked an instruction submitting the issue of mistake to the jury.

5. The admission of the testimony of Mrs. Hale is challenged. She was the wife of defendant George W. Hale, and there was nothing to show she had been appointed his agent in the transaction about which she testified. The sum of her testimony was that plaintiff turned over to her an envelope telling her to hand it to her husband as there was a note in it for him. If she was an incompetent witness under the statute, the admission of her testimony was harmless. The only thing she stated which her husband did not testify to, was that plaintiff told her the envelope contained a note for her husband and to hand it to him. There was no controversy about this incident having occurred, and that the envelope passed from her hands into her husband's with only one note in it, was otherwise proved. Her testimony regarding plaintiff's statement about the contents of the envelope and what she should do with it, while probably incompetent, could have had no influence on the jury prejudicial to plaintiff and ought not to work a reversal of the judgment.

6. Errors are assigned in general terms because of the rulings on requests for instruction. It is said the court wrongly granted those asked by defendants and wrongly refused certain of those asked by plaintiff. We are not inclined to consider the rulings in detail on those complaints, which do not go into particulars

or say wherein the instructions are erroneous. The main principles of law applicable to the case and announced in the charges have been discussed and held to be correct.

The judgment is affirmed.   All concur.